# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1646 | **DATE** | 2/20/2002 |
| **CASE TITLE** | Tidwell vs. Teneyuque et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Ruling held. **ENTER MEMORANDUM OPINION:** We grant summary judgment (Doc 53-1) on the remaining counts of the complaint to Teneyuque, Artz, Pakula and Collins. Plaintiff to take nothing. All matters in controversy having been resolved, final judgment is hereby entered in favor of all defendants and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 21 2002 date docketed | 56 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials SCT | 02 FEB 20 PM 5:11 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAURICE TIDWELL,

    Plaintiff,

vs.    00 C 1646

EDUARDO TENEYUQUE,
EDWARD PAKULA, CHARLES ARTZ,
and T. COLLIN,

    Defendants.

DOCKETED
FEB 21 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the Defendants' motion for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Maurice Tidwell ("Tidwell") was arrested in late November 1999 by Defendants Gerardo Teneyuque ("Teneyuque"), Charles Artz ("Artz"), Edward Pakula ("Pakula"), and Terrence Collins ("Collins"), collectively referred to herein as "the Officers," in Chicago, Illinois.[1] At approximately 12:30 a.m., Teneyuque and Artz arrived at 4950 S. King Drive in response to a radio call. A person matching the

---

[1] The facts stated in this opinion are derived from the statement of facts filed by Teneyuque, Artz, Pakula, and Collins pursuant to Local Rule 56.1. As Tidwell has not filed a responsive statement controverting any of those facts, they are deemed admitted.



description given in the call stood at the front entrance of that address; that person was Tidwell. As the police approached him, Tidwell fled into the building. Artz gave chase while Teneyuque waited by the front door to intercept Tidwell if he tried to leave the building. During the chase, Tidwell slipped and fell on a flight of stairs but continued to flee from Artz toward the front entrance. As Tidwell approached, Teneyuque prevented his escape by shoulder-blocking him, knocking them both to the ground. As the two fell, Tidwell withdrew an object from his waistband; Teneyuque identified it as a gun. Tidwell did not shoot; instead he threw it through a mail slot of a nearby apartment. The two officers attempted to subdue and handcuff Tidwell but were unsuccessful as he continued to wrestle and struggle with them.

Meanwhile, Pakula and Collins arrived at the scene, responding to a call that Teneyuque and Artz needed backup. They observed the three men fighting on the floor of the building, and Pakula informed Tidwell that he would spray him with pepper spray if he did not place his hands behind his back. Tidwell did not comply, and Pakula sprayed his face three times, waiting at least 10 seconds between sprays. At some point during the struggle, the officers hit Tidwell in the legs and repeatedly kicked the side of his chest. One of the kicks knocked his wind out; he ceased his resistance and allowed himself to be handcuffed. After Tidwell's hands were secured, none of the officers hit him again.

Tidwell was then placed in a police squadrol, where he sat for approximately 20 minutes while the officers searched for the gun Teneyuque had identified in Tidwell's possession. He did not communicate with anyone during his subsequent transport to the station, and once there, he spoke only to answer the questions Teneyuque asked of him while he filed the arrest report. Once Teneyuque completed the report, Tidwell was taken to the lockup. The lockup keeper asked Tidwell if he wanted to go to the hospital, and he responded that he did. A few hours later, at approximately 5 a.m., Teneyuque and Artz returned to the lockup and transported Tidwell to Mercy Hospital. The doctor who examined Tidwell prescribed ibuprofen but did not diagnose the two broken ribs he had sustained from being kicked in the chest. These injuries were detected two days later at another medical facility.

As a result of this incident, Tidwell filed a complaint that alleged both constitutional and state law violations. On March 29, 2001, we dismissed two claims in their entirety and portions of four others. Teneyuque, Artz, Pakula, and Collins now move for summary judgment of the remaining counts.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine

issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 312, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we turn to the City's motion.

## DISCUSSION

### I. Constitutional Claims

Tidwell bases several claims, in whole or in part, on 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments. He alleges specific violations in the form of excessive force and failure to provide medical care as well as much more general allusions to those two amendments.

Excessive force claims must be analyzed under a Fourth Amendment framework, which looks to whether an officer's use of force was reasonable, Graham v. Connor, 109

S.Ct. 1865 (1989). We must judge reasonableness from the objective perspective of an officer in light of the facts and circumstances of the situation known at the time of the arrest, and taking into account that officers are required to make quick judgments in rapidly changing, often dangerous circumstances, where they do not have the luxury of calm, deliberate reflection. Graham, 109 S.Ct. at 1872. The proper application of the Fourth Amendment test for reasonableness must therefore focus on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, at 1872.

Applying these considerations to the facts of this case, we conclude that the officers' actions acted reasonably during Tidwell's arrest. There is no indication that the officers were originally seeking out Tidwell in connection with the crime for which he was eventually charged and convicted, unlawful use of a weapon by a felon. However, when we consider Tidwell's actions, the reasonableness of the officers' response becomes apparent. Tidwell fled as soon as he saw Teneyuque and Artz approach. They believed that he was armed, and he vigorously resisted their attempts to handcuff him. The officers acted in a way calculated to protect their safety and to control an actively resistant adversary. The extent of their efforts under the circumstances was reasonable.

Tidwell's second specific constitutional claim rests on an allegation that the officers failed to provide medical care. For pretrial detainees like Tidwell, failure to provide medical care is analyzed under the Fourteenth Amendment. Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994); Bell v. Wolfish, 99 S.Ct. 1861, 1872-73 (1979). To make out a viable claim, Tidwell must show that officials acted with deliberate indifference. Estelle v. Gamble, 96 S.Ct. 285, 291 (1976); Tesch v. County of Green Lake, 157 F.3d 465, 473 (7th Cir. 1998). This case shows no deliberate indifference to Tidwell's medical needs. In short, within a reasonable amount of time after he told lockup personnel that he wished to see a doctor, he was taken to Mercy Hospital and treated. That is all that was required of these officers.

The remaining allegations of constitutional deprivation are without merit. The first merely realleges, in terms more vague, the claims we have just discussed. The second alleges that the officers present at the arrest failed to prevent the unlawful acts of their comrades. However, none of those acts were indeed unlawful, so that argument does not make it past the gate.

Because we can find no constitutional violation within the facts presented to us, we must also conclude that the officers are entitled to qualified immunity from Tidwell's § 1983 claims. Saucier v. Katz, 121 S.Ct. 2151, 2155 (2001). Because Tidwell cannot make it beyond this threshold consideration, we need not address

whether the rights in question were clearly established at the time of the purported violation. Id.

## II. State Law Claims

In their brief, the officers argue that Tidwell cannot show each of the elements required for his claim of battery. However, they cite to the Illinois criminal battery statute. 720 ILCS 5/12-3(a). Tidwell's claim is of course premised on tortious battery, which is defined as "the wilful touching of the person of another or a successful attempt to commit violence on the person of another." Britamco Underwriters, Inc., v. J.O.C. Enterprises, Inc., 623 N.E.2d 1036, 1040 (Ill. App. 1993), quoting Parrish v. Donahue, 443 N.E.2d 786, 788 (Ill. App. 1982). The story does not end there; a claim of tortious battery can be defeated by successful assertion of an affirmative defense. See, e.g., Cohen v. Smith, 648 N.E.2d 329, 332 (Ill. App. 1995) (consent); Tucker v. McNulty, 527 N.E.2d 953, 956 (Ill. App. 1988) (provocation); Cowan v. Ins. Co. of N. America, 318 N.E.2d 315, 323 (Ill. App. 1974) (self-defense). In this case, the officers have asserted the affirmative defense that they are entitled to immunity for any tortious injury that they may have inflicted by the Illinois Tort Immunity Act. 745 ILCS 10/2-202. That section confers on public employees immunity from liability for acts or omissions that occur during "the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202; Bruecks v. County of Lake, 658 N.E.2d 538, 539 (Ill. App. 1995). In this case, the officers were engaged in

enforcement of the law during their arrest of Tidwell. Therefore, unless they can be shown to have acted willfully and wantonly, they are immune from liability for injuries under the state torts of assault and battery that Tidwell advances. The facts presented, as discussed above, show reasonable, not willful and wanton behavior, and we have no argument from Tidwell by way of refutation. Accordingly, the officers cannot be held liable for damages Tidwell suffered during his arrest.

Finally, Tidwell asserts a claim for false imprisonment. It too is ill-fated. The law is well settled that neither a state nor a constitutional tort action for false imprisonment can stand if the underlying arrest was made with probable cause. Randall v. Lemke, 726 N.E.2d 183, 186 (Ill. App. 2000) (noting that claims for false imprisonment must include a lack of reasonable grounds to believe that the plaintiff was committing an offense); Schwartz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989).

## CONCLUSION

For the foregoing reasons, we grant summary judgment on the remaining counts of the complaint to Teneyuque, Artz, Pakula, and Collins.

_____
Charles P. Kocoras
United States District Judge

Dated: FEB 2 0 2002